DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DARRICK WASHINGTON,**
Appellant,

v.

**E. CLAYTON YATES, ESQUIRE, YATES & MANCINI, LLC,** and
**BLACK LAWYERS FOR JUSTICE,**
Appellees.

No. 4D20-1745

[May 4, 2022]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Barbara W. Bronis, Judge; L.T. Case No. 562016CA001941.

Richard L. Allen, Jr., and Sharon J. Henry of Mateer Harbert, P.A., Orlando, for appellant.

Jaclyn Ann Behar and Sharita R. Young of BeharBehar, Sunrise, for appellees E. Clayton Yates, Esquire, and Yates & Mancini, LLC.

PER CURIAM.

*Affirmed.*

CONNER, C.J., and KUNTZ, J., concur.
FORST, J., concurs specially with opinion.

FORST, J., concurring specially.

I join my colleagues in affirming the trial court's order granting Defendants E. Clayton Yates and his firm Yates & Mancini, LLC's motion for final summary judgment with respect to the legal malpractice lawsuit filed by Appellant/Plaintiff Darrick Washington.

In 2010, Washington led an Indian River County Sherriff's Office deputy on a high-speed chase through a residential neighborhood. When cornered by the deputy, Washington drove his vehicle at a high rate of speed toward the deputy. Perceiving a threat to his safety and others, the deputy fired multiple shots at Washington's vehicle, one of which struck Washington in

his upper torso. Washington was arrested and ultimately found guilty of assault on a law enforcement officer, driving without a license, and high speed and wanton fleeing.

Following the trial and jury verdict, Washington retained Gregory L. Lattimer, Malik Z. Shabazz, A. Julia Graves, and their respective law firms[1] to represent him in a federal action against the deputy. Lattimer drafted the complaint, which alleged that the deputy used excessive force against Washington, in violation of 42 U.S.C. § 1983. Yates agreed to file the complaint.

Due to the negligence of his attorneys, Washington's complaint was filed a month after the four-year statute of limitations to file the federal complaint passed. The defendants filed motions for summary judgment, contending the federal complaint was time-barred. The federal district court granted summary judgment, finding equitable tolling inapplicable and the complaint untimely filed.

After Washington's federal case was closed, he filed a legal malpractice complaint in state court against Lattimer, Shabazz, Graves, Yates, and their respective law firms. In their answer to the legal malpractice complaint, the lawyers who drafted, attempted to file, and ultimately (but untimely) filed the complaint took the position that Washington's federal complaint would have been futile—even if it was timely filed—because the deputy would have been entitled to qualified immunity. As such, they claimed the untimely filing of the complaint was not the proximate cause of Washington's loss. In separate orders, the trial court granted Lattimer's and Yates' motions for summary judgment, concluding "on the undisputed facts, there is no likelihood that Washington would have succeeded in the federal court lawsuit." Washington appealed both final summary judgments.[2] In *Washington v. Lattimer*, 4D19-0552, Washington's counsel filed a notice of voluntary dismissal of his appeal.

"A legal malpractice action has three elements: 1) the attorney's employment; 2) the attorney's neglect of a reasonable duty; and 3) the attorney's negligence as the proximate cause of loss to the client." *Law Office of David J. Stern, P.A. v. Sec. Nat'l Servicing Corp.*, 969 So. 2d 962, 966 (Fla. 2007). The three-pronged approach to legal malpractice suits

---

[1] Lattimer and Shabazz were affiliated with the Washington, D.C. firm Black Lawyers for Justice. The Law Offices of A. Julia Graves, P.A., was located in Indian River County, Florida.

[2] The claims against Graves, Shabazz, and law firms other than Yates & Mancini, LLC, appear to have been dismissed and/or settled.

has been a part of Florida common law since at least 1973, when the Third District Court of Appeal adopted the "rule established in [*Maryland Casualty Co. v. Price*, 231 F. 397 (4th Cir. 1916)]," "a landmark decision concerning legal malpractice cases." *Weiner v. Moreno*, 271 So. 2d 217, 219 (Fla. 3d DCA 1973) (noting "the substance of [the *Price* rule was already] evident in various Florida cases"). *Price* determined that "suits against attorneys for negligence are governed by the same principles as apply in other negligent actions." *Price*, 231 F. at 402.

Here, in seeking summary judgment, both Yates and Lattimer focused on the third element—the attorney's negligence as the proximate cause of loss to the client. They contended that Washington's federal lawsuit would have been futile, and thus the attorneys' negligent failure to timely file the lawsuit could not be the legal cause of Washington's alleged loss.

"The third element regarding the loss to the client is not satisfied unless the plaintiff demonstrates that there is an amount of damages which the client would have recovered but for the attorney's negligence." *Tarleton v. Arnstein & Lehr*, 719 So. 2d 325, 328 (Fla. 4th DCA 1998) (quoting *Sure Snap Corp. v. Baena*, 705 So. 2d 46, 49 (Fla. 3d DCA 1997)). "This requirement has resulted in a legal malpractice action being referred to as a 'trial within a trial.'" *Id.* (quoting *Silvestrone v. Edell*, 701 So. 2d 90, 92 (Fla. 5th DCA 1997) (Sharp, J., dissenting)).

Washington's legal malpractice complaint contends Washington's mother was contacted in the spring of 2014 by Shabazz:

> Shabazz explained that he was a member of a group of attorneys called Black Lawyers for Justice that specialized in handling the kind of civil rights case that would need to be filed on behalf of Darrick. He explained that he and his attorneys were the best in the country and told [Washington's mother] that she should hire him and his group to represent Darrick. [The mother] described this phone call as a "sales pitch."

To recap, lawyers from Washington, D.C. made a sales pitch to Washington's mother, drafted a complaint charging the deputy with violating Washington's civil rights, and attempted to file the complaint in federal court. Less than three years later—primarily based on the same record and allegations, but now faced with a legal malpractice lawsuit resulting from negligence in filing Washington's federal civil rights complaint—Washington's original legal team chose to renounce the very legal arguments they had set forth in the federal complaint and had

previously attempted to pursue.  They thus contended the deputy would have been entitled to qualified immunity and "there is no likelihood that Washington would have succeeded [on the merits] in the federal court lawsuit [they had drafted and endeavored to file]."  It is as if "the speaker had switched from one line to the other actually in mid-sentence, not only without a pause, but without even breaking the syntax."  George Orwell, *Nineteen Eighty-Four* 107 (Harcourt, Brace and Co. ed., 1949).

Nonetheless, under the *Price* methodology of adjudicating legal malpractice claims, the attorneys who drafted and attempted to file a complaint seeking damages from the deputy for his shooting of Washington <u>were not legally estopped</u> from later defending that shooting. *Whether they should be is not an issue before this court, but one worthy of contemplation in another forum.*  Thus, notwithstanding the original legal team's negligence, those attorneys walked away from this matter with minimal adverse consequences.

Once the negligence of Washington's original legal team was established, the focus of the ensuing legal proceedings would have been on the justification for the deputy's shooting Washington.  However, the deputy would not be a party to these proceedings and the defense of his actions would be in the hands of the attorneys who had drafted and attempted to file a complaint challenging those actions.  *Again, whether this is an efficient use of judicial resources and a "good look" for the legal system is not an issue before this court.*  Only by virtue of the trial court granting the defense's motion for summary judgment was a "trial within a trial" avoided.

As to the merits of Washington's appeal, as noted in the trial court's order, "[t]he facts are undisputed that Washington refused to stop his vehicle; was driving recklessly at a high rate of speed attempting to flee from the officer; and subsequently turned and drove his vehicle at a high rate of speed toward the officer."  Under the circumstances, the trial court here could conclude that "a reasonable officer would believe that this level of force is necessary in the situation at hand." *Mercado v. City of Orlando*, 407 F.3d 1152, 1157 (11th Cir. 2005) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002)).  As such, applying the present legal malpractice methodology, the untimely filing of the complaint was not "the proximate cause" of Washington's loss.  I thus concur in affirming the trial court's order.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***